1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MARK BAKER,                                    No.  2:25-cv-01063-DC-CKD (PS)

12                      Plaintiff,                    FINDINGS AND RECOMMENDATIONS
                                                      DENYING PLAINTIFF'S MOTION TO
13              v.                                    REMAND AND GRANTING DEFENDANTS'
                                                      MOTION TO DISMISS
14    ZIPLINE INTERNATIONAL INC, et al.,
                                                      (ECF Nos. 14, 21, 22)
15                      Defendants.

16

17

18            Defendants Yolo Land & Cattle Co. ("Yolo Land"), Zipline International Co. ("Zipline"),

19    and Yolo County removed this action from Yolo County Superior Court on April 9, 2025. (ECF

20    No. 1.) Plaintiff Mark Baker proceeds without counsel. This matter is before the undersigned

21    pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c)(21).

22            Presently before the Court is plaintiff's motion to remand (ECF No. 14); and defendants

23    Yolo Land and Zipline's; and defendant Yolo County's motions to dismiss. (ECF Nos. 21, 22.)

24    All three defendants filed a joint opposition to plaintiff's motion to remand. (ECF No. 16.)

25    Plaintiff opposed both motions to dismiss (ECF Nos. 24, 25) and all defendants filed replies (ECF

26    Nos. 26, 28). The Court held a hearing on June 25, 2025. Plaintiff appeared pro se, attorney

27    Michael Ryan Pinkston appeared on behalf of defendants Zipline and Yolo Land, and attorney

28    Eric May appeared on behalf of defendant Yolo County.

                                                    1

For the reasons set forth below, plaintiff's motion to remand should be denied and defendants' motions to dismiss should be granted with leave to amend.

## I.    Procedural Background

Plaintiff filed a complaint in the Yolo County Superior Court on March 5, 2025. (ECF No. 2 at 4-37.) On March 10, 2025, plaintiff filed an amendment to the complaint, updating the name of the Yolo Land defendant. (Id. at 40.) On April 7, 2025, defendants Yolo Land and Zipline signed an acknowledgment of receipt regarding the amendment. (Id. at 41-42.) On April 9, 2025, all defendants removed this action to this Court. (ECF No. 1.) On April 14, 2025, the Court granted defendants' opposed ex parte application for an extension of time to respond to the initial complaint. (ECF No. 12; see ECF Nos. 8, 13.) On April 11, 2025, plaintiff filed a motion to remand (ECF No. 14), which all defendants opposed (ECF No. 16).

On May 14, 2025, defendants Yolo Land and Zipline filed a motion to dismiss, which is fully briefed. (ECF Nos. 21, 24, 28.) On May 14, 2025, defendant Yolo County also filed a motion to dismiss, which is fully briefed. (ECF Nos. 22, 25, 26.)

## II.    Allegations in the Complaint

Plaintiff brings this complaint against defendants Yolo Land, Zipline, and Yolo County for violations of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12101, et seq. and the California Unruh Civil Rights Act, California Civil Code §§ 51-53. (ECF No. 2 ¶ 1.) Plaintiff's claims center around the use of Light-emitting diode ("LED") lights on drones and drone towers. (See id. ¶¶ 10-13.) Plaintiff alleges that LED lights are "neurologically intolerable" for individuals with certain disabilities, including epilepsy, autism, post-traumatic stress disorder, photophobia, traumatic brain injury, migraines, electromagnetic sensitivity, and others. (Id. ¶ 15.) Plaintiff alleges that he has the "qualified ADA disabilities of autism and photophobia." (Id. ¶ 31.)

Plaintiff alleges that Yolo Land is a "business that is open to the public, hosting weddings and other events on the property." (Id. ¶ 44.) Yolo Land allegedly leases land to Zipline. (Id.) Plaintiff alleges that Zipline is a drone airport that delivers products and services to individuals via drones. (Id. ¶ 45.) In December 2024, plaintiff became aware of drones and drone towers on

1  Yolo Land that contained LED strobe lights. (Id. ¶ 16.) Plaintiff further alleges that it is operating

2  on Yolo Land without the proper permits. (See id. ¶¶17-18.)

3      Plaintiff states that he emailed an individual from Yolo Land "requesting ADA

4  accommodation" that the LED lights be turned off or dimmed so the lights did not interfere with

5  plaintiff's life at home, about five miles from the airport. (Id. ¶ 20.) Plaintiff alleges that he

6  notified all defendants multiple times about incidents of alleged discrimination involving the

7  strobe lights, but none of the defendants provided the requested ADA accommodation. (Id. ¶ 23.)

8      According to plaintiff, Zipline drones and towers emit "unregulated, intense, digitally

9  pulsing LED light," which extend to a ten mile radius around the drone. (Id. ¶ 30.) Plaintiff states

10  that the LED strobe lights prevent him from "look[ing] in the direction of the drone airport at

11  night" and that Yolo County has failed to issue a permit to Zipline and Yolo Land. (Id. ¶ 32.)

12      Plaintiff brings claims under Title II of the ADA against defendant Yolo County (id.

13  ¶¶ 37-38, 56A); Title III of the ADA against defendants Zipline and Yolo Land for discrimination

14  (id. ¶¶ 40-52; see id. ¶ 56B); and the Unruh Act against all defendants (id. ¶¶ 53-55).

15  **III.    Motion to Remand**

16      On April 11, 2025, plaintiff filed a motion to remand this case to the Yolo County

17  Superior Court. (ECF No. 14.) Plaintiff acknowledges that his complaint lists causes of action

18  under the ADA and the California Unruh Act but argues that the "state law fully encompass[es]

19  the federal law." (Id. at 2-3.) Plaintiff argues that the Unruh Act "includes the entirety of the

20  [ADA]," and "there is no issue in [p]laintiff's claim that is solely a federal issue." (Id. at 3.)

21  Plaintiff further argues that there is no basis for diversity jurisdiction because the case involves a

22  single location in Yolo County, plaintiff lives in Yolo County, and Yolo County and Yolo Land

23  are local. (See id. at 4.) Plaintiff states that defendant Zipline operates globally. (Id.) Plaintiff

24  argues that defendants have provided no justification for removal, the Eastern District of

25  California is overburdened, and that removal creates an undue burden for plaintiff who is a pro se

26  litigant. (Id. at 4-6.)

27      All three defendants filed a joint opposition to plaintiff's motion for remand. (ECF No.

28  16.) Defendants address each of plaintiff's arguments. Firstly, and most importantly, defendants

3

1  argue that plaintiff expressly asserted two claims under the ADA in his complaint, which present

2  federal questions, and seeks relief under federal law. (Id. at 2, 3.)

3  **A. Legal Standards**

4  In relevant part, the federal removal statute provides:

5  > (a) Except as otherwise expressly provided by Act of Congress, any
6  > civil action brought in a State court of which the district courts of the
   > United States have original jurisdiction, may be removed by the
7  > defendant or the defendants, to the district court of the United States
   > for the district and division embracing the place where such action is
8  > pending.

9  28 U.S.C. § 1441(a). "The defendant bears the burden of establishing that removal is proper."

10  Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009). "The

11  removal statute is strictly construed against removal jurisdiction," id., and removal jurisdiction

12  "must be rejected if there is any doubt as to the right of removal in the first instance," Geographic

13  Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1107 (9th Cir. 2010) (citation and quotation

14  marks omitted).

15  A federal district court generally has original jurisdiction over a civil action when: (1) a

16  federal question is presented in an action "arising under the Constitution, laws, or treaties of the

17  United States" or (2) there is complete diversity of citizenship and the amount in controversy

18  exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332(a).

19  With regard to federal question jurisdiction, federal courts have "jurisdiction to hear,

20  originally or by removal from a state court, only those cases in which a well-pleaded complaint

21  establishes either that federal law creates the cause of action, or that the plaintiff's right to relief

22  necessarily depends on resolution of a substantial question of federal law."  Franchise Tax Bd. Of

23  State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 27-28 (1983); see also

24  Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088-89 (9th Cir. 2002). "[T]he presence

25  or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,'

26  which provides that federal jurisdiction exists only when a federal question is presented on the

27  face of the plaintiff's properly pleaded complaint." Placer Dome, Inc., 582 F.3d at 1091 (citation

28  and quotation marks omitted).

4

**B.  Analysis**

Defendants have met their burden to show that removal to this Court is proper. As defendants note, this Court has original jurisdiction over this action because plaintiff brings two claims under the ADA. See 28 U.S.C. § 1331; ECF No. 1 ¶¶ 7-8. Plaintiff's claims under the ADA present federal questions. See Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000). Plaintiff clearly brings claims under Titles II and III of the ADA. (ECF No. 2 ¶¶36-52.) Further, plaintiff states that he seeks relief, in part, "for repeated and ongoing violations of the [ADA]." (Id. ¶ 1.) Plaintiff also states that he requested "ADA accommodation" from defendant Yolo Land (id. ¶¶ 19-20) and lists out legal standards related to the ADA (id. ¶¶26-32).

Accordingly, plaintiff's complaint clearly presents a federal question on the face of his complaint. See Placer Dome, Inc., 582 F.3d at 1091. Plaintiff's motion to remand should be denied.

**IV.    Motions to Dismiss**

**A.  Legal Standards**

**1.  Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)**

Dismissal under Rule 12(b)(6) may be warranted for "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

"[R]ecitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a valid claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state a valid claim for relief a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A claim that is plausible on its face has sufficient factual content

1    to allow a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 556

2    U.S. at 678. This plausibility standard "asks for more than a sheer possibility that a defendant has

3    acted unlawfully." Id.

4        The court must construe a pro se pleading liberally to determine if it states a claim and,

5    prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity

6    to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v.

7    Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri, 901 F.2d at 699

8    (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are

9    involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts

10   continue to construe pro se filings liberally even when evaluating them under the standard

11   announced in Iqbal). Nevertheless, courts are not required to accept as true allegations that are

12   merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Sprewell v.

13   Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

14   **2.  Title II of the ADA**

15       Under Title II of the ADA, a plaintiff must show that (1) he "is an individual with a

16   disability"; (2) he "is otherwise qualified to participate in or receive the benefit of a public

17   entity's services, programs, or activities"; (3) he "was either excluded from participation in or

18   denied the benefits of the public entity's services, programs or activities or was otherwise

19   discriminated against by the public entity"; and (4) "such exclusion, denial of benefits or

20   discrimination was by reason of h[is] disability." Sheehan v. City & Cnty. of San Francisco, 743

21   F.3d 1211, 1232 (9th Cir. 2014) rev'd in part, cert. dismissed in part sub nom. City & Cnty. of

22   San Francisco, Calif. v. Sheehan, 575 U.S. 600 (2015).

23   **3.  Title III of the ADA**

24       The ADA prohibits discrimination "on the basis of disability in the full and equal

25   enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

26   place of public accommodation by any person who owns, leases (or leases to), or operates a place

27   of public accommodation." 42 U.S.C. § 12182(a). To prevail on a Title III discrimination claim,

28   the plaintiff must show that (1) he is disabled within the meaning of the ADA; (2) the defendant

6

1    is a private entity that owns, leases, or operates a place of public accommodation; and (3) the

2    plaintiff was denied public accommodations by the defendant because of his disability. Molski v.

3    M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. § 12182(a)-(b)). A plaintiff

4    does not need to show that there was intentional discrimination to show a violation under the

5    ADA. Lentini v. Cal. Center for the Arts, Escondido, 370 F.3d 837, 846 (9th Cir. 2004).

6    Monetary damages are not available in private actions under Title III. Molski, 481 F.3d at 730.

7                      **4.   California's Unruh Civil Rights Act**

8            The Unruh Act provides that all persons "are free and equal" no matter what their

9    "disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges,

10   or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A

11   violation of the ADA is considered a violation of the Unruh Act. Id. § 51(f). An Unruh Act claim

12   requires that the plaintiff alleges an intentional act or omission on part of the defendant. Schutza

13   v. Cuddeback, 262 F. Supp. 3d 1025, 1029 (S.D. Cal. 2017). If a plaintiff pleads intentional

14   discrimination in violation of the Unruh Act, a plaintiff may maintain an Unruh Act claim

15   independent of an ADA claim. Id.

16           **B.  Defendants' Zipline International Inc. and Yolo Land & Cattle Co's Motion**

17                  **to Dismiss (ECF No. 21)**

18           Defendants Zipline and Yolo Land move to dismiss plaintiff's claims against them,

19   arguing that plaintiff's allegations fail to state claims under Title III of the ADA or the Unruh

20   Act. (ECF No. 21-1 at 9.) Plaintiff opposed the motion, and defendants Zipline and Yolo land

21   replied. (ECF Nos. 24, 28.)

22                          **1.  Title III of the ADA**

23           Plaintiff brings a claim under Title III of the ADA against defendants Zipline and Yolo

24   Land. (ECF No. 2 ¶¶ 39-52.) Plaintiff alleges that defendants Zipline and Yolo Land are

25   discriminating against plaintiff. Plaintiff states that he is not attempting to visit the drone airport

26   or Yolo Land's property, but "Zipline's facilities are bringing their discrimination to Plaintiff's

27   private property via the use of unregulated, excessively intense, digitally pulsing LED lights." (Id.

28   ¶ 40.) Defendants Zipline and Yolo Land do not challenge that plaintiff has plausibly alleged a

1    disability within the meaning of the ADA. (ECF No. 21-1 at 9-10.) However, defendants Zipline

2    and Yolo Land argue that plaintiff has not sufficiently alleged the remaining elements of a Title

3    III claim. (Id. at 10.)

4           First, plaintiff has failed to sufficiently allege facts establishing a place of public

5    accommodation. Plaintiff states that he is "denied full and equal enjoyment of Defendants'

6    facilities and Plaintiff's own property." (ECF No. 2 ¶ 40.) To the extent plaintiff is attempting to

7    argue that his own property is a place of public accommodation, this claim fails because a private

8    residence is not a place of public accommodation. See Trostenetsky v. Keys Condominium

9    Owners Ass'n, 2018 WL 2234599, at *2 (N.D. Cal. May 16, 2018); see also Indep. Housing

10   Servs. Of San Francisco v. Fillmore Center Associates, 840 F. Supp. 1328, 1344 n.14 (N.D. Cal.

11   1993) (explaining that "public accommodations" within the meaning of the ADA does not include

12   residential facilities). Plaintiff also has not sufficiently alleged that either Zipline or Yolo Land

13   are places of public accommodation. Determining whether a facility is a "public accommodation"

14   depends on whether the facility is open "indiscriminately to other members of the general public."

15   Montoya v. City of San Diego, 434 F. Supp. 3d 830, 844 (S.D. Cal. 2020) (citations omitted). The

16   ADA lists certain public entities that are considered public accommodations, including an inn,

17   hotel, or motel; a restaurant; convention center or other place of public gathering; sales or rental

18   establishment; park or other place of recreation, amongst others. 42 U.S.C. § 12181(7). Some

19   factors courts can consider in determining whether a facility is "private" include: the use of the

20   facilities by nonmembers; the purpose of the facility's existence; advertisement to the public; and

21   profit or nonprofit status. Jankey v. Twentieth Century Fox Film Corp., 14 F. Supp. 2d 1174,

22   1179 (C.D. Cal. 1998), aff'd, 212 F.3d 1159 (9th Cir. 2000).

23          Plaintiff only offers conclusory allegations that defendant Yolo Land is open to the public

24   and that Zipline is "also a public accommodation" (ECF No. 2 ¶¶ 44-45) but does not allege

25   specific facts that support these statements. Plaintiff alleges that defendant Yolo Land is "a

26   business that is open to the public, hosting weddings and other events on the property" and that

27   "Yolo Land is the property owner and is leasing the land to Zipline." (ECF No. 2 ¶ 44.) However,

28   plaintiff has not described these other events that occur at Yolo Land or state how often these

8

1    weddings or other events occur. See Jankey, 14 F. Supp. 2d at 1178 (describing how a facility that

2    specializes in hosting wedding receptions may be open only to invitees but is a public

3    accommodation, but "occasional use of an exempt commercial or private facility by the general

4    public is not sufficient" to describe a public accommodation). In plaintiff's opposition, he adds

5    that Yolo Land owns and operates a business which "hosts obstacle courses, civil war -

6    reenactments which charge an entrance fee, weddings, and holiday parties." (ECF No. 24 at 9.)

7    However, plaintiff does not allege that these events are open to the general public, or that these

8    events on Yolo Land take place at or near the drone airport. Plaintiff has not established that Yolo

9    Land or the particular site used by Zipline are places of public accommodation. See Langer v.

10   Kiser, 57 F.4th 1185, 1102 (9th Cir. 2023) ("[W]hen facilities within a place of public

11   accommodation are closed to the public, those facilities do not need to comply with Title III of

12   the ADA.")

13        Plaintiff also alleges that Zipline "has facilities which geographically overlap with public

14   and private spaces" and "deliver[s] products and services via drone to customers." (ECF No. 2

15   ¶¶ 4, 45.) However, plaintiff has not sufficiently described these facilities or the public or private

16   spaces. Plaintiff's allegation that Zipline delivers products and services is insufficient to state a

17   claim that Zipline is a public accommodation because places of public accommodation are

18   necessarily "actual, physical *places* where goods or services are open to the public, and *places*

19   where the public gets those goods or services." Weyer v. Twentieth Century Fox Film Corp., 198

20   F.3d 1104, 1114 (9th Cir. 2000) (emphasis added). Plaintiff has not alleged that he was denied

21   goods or services in Zipline based on his disability. Therefore, plaintiff has failed to allege that

22   defendants Zipline or Yolo Land are places of public accommodation.

23        Plaintiff has also not shown that he was denied accommodation based on his disability.

24   Any allegations that plaintiff was denied access to his home fails because his private residence is

25   not a public place. See Trostenetsky, 2018 WL 2234599, at *2. Further, plaintiff acknowledges

26   that he "is not attempting to visit the drone airport and is not attempting to visit the Yolo Land

27   property." (ECF No. 2 ¶ 40.)

28        Even if plaintiff had shown that either defendant Zipline or Yolo Land were places of

9

public accommodation, plaintiff has not alleged sufficient facts to show that he was denied access to a public space based on his disability. Plaintiff states that the drone airport is a "new construction project" and an "alteration to the Yolo Land property," and that the ADA requires that the facilities be "readily accessible" to individuals with disabilities. (ECF No. 2 ¶ 46.) This third element of a Title III claim is met if there was a violation of applicable accessibility standards. Moeller v. Taco Bell Corp., 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011) (citing Chapman v. Pier 1 Imports (U.S.), Inc., 631 F.3d 939, 945 (9th Cir. 2011)). The category of accessibility requirements potentially relevant here is the "new construction" provision, which apply to public accommodations constructed after January 26, 1993, and requires all facilities built for first occupancy after January 26, 1993, be readily accessible to use and usable by persons with disabilities unless an entity can show that it is structurally impracticable under the Americans with Disabilities Act Accessibility Guidelines. Id. (citing 42 U.S.C. § 12183(a)). Here, plaintiff has not shown how "LED strobe lights on the drones and drone towers" make "the facilities" inaccessible. Therefore, plaintiff has failed to allege that defendants Zipline and Yolo Land denied him accommodation based on his disability.

In plaintiff's opposition to defendants Zipline and Yolo Land's motion to dismiss, plaintiff argues that "it is not the 'place of public accommodation' or retail end of Zipline's operations that are at issue in this claim. This claim is about Zipline's operation of a commercial facility that consists of drones and drone towers at the site belonging to Yolo Land." (ECF No. 24 at 10.) Plaintiff states that his "claim is not about . . . 'place of public accommodation.' This claim is about . . . 'commercial facility.'" (Id. at 10-11.) Plaintiff argues that defendant Zipline operates a commercial facility that "must comply with ADA requirements which prohibit all forms of discrimination." (Id.) In their reply, defendants' Zipline and Yolo Land argue that plaintiff in his opposition, "newly" asks the Court to impose liability because Zipline is a commercial facility. (ECF No. 28 at 5.) Defendants argue that 42 U.S.C. § 12182(a) does not apply to any and all "commercial facilities" regardless of whether the facilities are a public accommodation. (ECF No. 28 at 5.)

First, plaintiff's statement in his opposition that his claim is not about a place of public

1  accommodation directly contradicts his complaint, in which he states that "Zipline is also a public

2  accommodation" (ECF No. 2 ¶ 45); "Zipline and Yolo Land both meet the criteria for public

3  accommodation" (id. ¶ 30; see id. ¶ 31). However, construing plaintiff's complaint liberally, he

4  does state in his complaint that the "drone airport is also a commercial facility" and states that the

5  drone airport is a "new construction project but is also an alteration to the Yolo Land property."

6  (ECF No. 2 ¶¶ 45, 46.) Plaintiff appears to be arguing that Zipline is a public accommodation, but

7  also a commercial facility so it is not a publicly accessible area. (ECF No. 24 at 10.) Regardless,

8  plaintiff's claim still fails because, as stated above, he has not established that either defendant

9  Zipline or Yolo Land are places of public accommodation. Further, while all commercial

10  facilities, including public accommodations, are governed by the standards in 42 U.S.C.

11  § 12193(a) related to new construction, only public accommodations are subject to the additional

12  prohibitions in 42 U.S.C. § 12182. Independent Living Resources v. Oregon Arena Corp., 982 F.

13  Supp. 698, 758-59 (D. Ore. Nov. 12, 1997). In other words, even if defendant Zipline is a

14  "commercial facility" that does not mean it is a public accommodation subject to the

15  requirements of 42 U.S.C. § 12182(a).

16          For the forgoing reasons, plaintiff has failed to state a claim under Title III of the ADA

17  against defendants Zipline and Yolo Land, and the motion to dismiss on this ground should be

18  granted.

19                          **2.  Unruh Act Claim**

20          Plaintiff brings an Unruh Act claim against defendants Zipline and Yolo Land, alleging

21  that their "actions of commandeering a geographic area with a radius exceeding 5 miles so that

22  they can operate their commercial drone airport at night deny the plaintiff's civil right to be free

23  and equal on Plaintiff's own property." (ECF No. 2 ¶ 54.)

24          Plaintiff has failed to state a claim against defendants Zipline and Yolo Land under the

25  Unruh Act. First, plaintiff has failed to allege an ADA violation, therefore plaintiff's claim should

26  be dismissed to the extent it is based on a violation of the ADA. See Cal. Civ. Code § 51(b).

27  Second, plaintiff has failed to allege that defendants Zipline or Yolo Land engaged in intentional

28  discrimination. Plaintiff has not stated any facts showing that either defendant intentionally

1    discriminated against plaintiff. Therefore, plaintiff's Unruh Act claims against defendants Zipline

2    and Yolo Land should be dismissed and the motion to dismiss should be granted on this ground.

3                    **C. Defendant Yolo County's Motion to Dismiss (ECF No. 22)**

4              Defendant Yolo County moves to dismiss plaintiff's claims against it, arguing that

5    plaintiff fails to state a claim under Title II of the ADA and the Unruh Act. (ECF No. 22.)

6                              **1.  Title II of the ADA**

7              Plaintiff brings a claim under Title II of the ADA against defendant Yolo County for

8    allegedly "failing to direct Zipline and Yolo Land to cease drone operations or issue a permit with

9    restrictions [which] denies Plaintiff the benefits of Yolo County's permit-issuing services." (ECF

10   No. 2 ¶ 37.) Defendant Yolo County does not contest that plaintiff has alleged that he has a

11   disability. (ECF No. 22 at 8.)

12             First, defendant Yolo County argues that plaintiff invokes the County's "permit-issuing

13   services," and argues that plaintiff is not qualified to receive this service which would allow him

14   to mandate the County to engage in enforcement proceedings. (ECF No. 22 at 8.) Plaintiff has not

15   alleged that he is qualified to receive the County's "permit-issuing services." To the extent

16   plaintiff is arguing that he is qualified to receive permit-issuing services that involve the County

17   deciding whether to issue a permit to a third-party other than plaintiff, plaintiff has failed to allege

18   sufficient facts supporting this argument. Plaintiff has not sufficiently demonstrated that he

19   should have any involvement in how the County chooses to issue permits to third parties. See

20   Riggs v. City of Oxnard, 154 Cal. Appl. 3d 526, 530 (city enforced a zoning ordinance and the

21   means of enforcing the ordinance was in the city's discretionary power). To the extent plaintiff is

22   seeking permit-issuing services from Yolo County, he is not qualified to receive these services.

23             Second, defendant Yolo County argues that plaintiff does not allege that he was entitled to

24   the services or program from which he was allegedly excluded. (See ECF No. 22 at 9.) Plaintiff

25   alleges that he was denied Yolo County's permit-issuing services. Plaintiff states that defendant

26   Yolo Land is currently "zoned Agricultural and thus a commercial drone airport is incompatible

27   with existing zoning for the Yolo Land parcel," so if "Yolo County were to issue a variance or

28   waiver of the existing Agricultural zoning, Yolo County would need to do so in such a manner as

                                              12

1    to ensure that neighbors are protected from any adverse impacts of the zoning change." (ECF No.

2    2 ¶ 38.) However, plaintiff has not established that he is entitled to the County's permit-issuing

3    services to the extent these services include the County's decision to issue a permit to a third-

4    party. As defendant Yolo County notes, plaintiff is free to seek permits that are offered by the

5    County. (Id.) Therefore, plaintiff has not satisfied this element.

6         In his opposition, plaintiff argues that government entities are prohibited from having

7    discriminatory policies, practices, or procedures, and that Yolo County must make reasonable

8    modifications to its policies that are discriminatory. (See ECF No. 25 at 6.) Plaintiff states that

9    defendant "Yolo County has a policy of ignoring the impacts of LED light on individuals with

10   disabilities, which is a discriminatory policy" (id.) and has requested that defendant Yolo County

11   make reasonable modifications and issue a cease-and-desist letter to Zipline. (See id. at 6.)

12   Plaintiff still has not alleged that he is qualified to participate in or receive the benefit of a public

13   entity's services, programs, or activities or that he was excluded from or denied benefits of these

14   services. See Sheehan, 743 F.3d at 1232.

15        Third, even if plaintiff was entitled to the Yolo County's permit issuing services, plaintiff

16   has not shown that he was excluded from this service due to his disability.

17        Therefore, plaintiff's Title II claim against defendant Yolo County fails to state a claim

18   and should be dismissed, and the motion to dismiss granted on this ground.

19                    **2.  Unruh Act Claim**

20        Defendant Yolo County argues that plaintiff has failed to state a claim against it under the

21   Unruh Act because the County is not a "business establishment." (ECF No. 22 at 12.) Addressing

22   the issue of whether a public entity (specifically, a public school) was a business establishment

23   under the Unruh Act, the California Supreme Court stated that the "purpose and legislative

24   history of the Unruh Civil Rights Act—and its predecessor statute—make clear that the focus of

25   the Act is the conduct of *private business establishments*." Brennon B. v. Superior Court, 13

26   Cal.5th 662, 675 (2022). The court reviewed prior cases and stated that these cases make clear

27   that "in order to be a 'business establishment' under the Act—an entity must operate as a business

28   or commercial enterprise when it discriminates." Id. 679, 681-82 ("In examining decisions both

                                    13

1  from the Courts of Appeal and by the federal courts, we find nothing that persuades us that the

2  outcome urged by the legislative history and favored by our prior cases should be rejected.

3  Instead, such cases further indicate that to be a 'business establishment' under the Act an entity

4  must effectively operate as a business or a commercial enterprise or 'engage[] in behavior

5  involving sufficient "businesslike attributes."'" (citation omitted)). Plaintiff has not shown how

6  defendant Yolo County was operating as a business establishment while issuing permits. See

7  Frazier v. City of Fresno, 2023 WL 4108322, at *61 (E.D. Cal. June 21, 2023) (reviewing case

8  law prior to Brennon and stating that "[a]ctivities relating to legislative processes, permitting

9  processes, and other regulatory processes, were generally held not to equate to the government

10  acting as a business establishment"). The Court agrees that regulatory decisions are not acts of a

11  business establishment. See Harrison v. City of Rancho Mirage, 243 Cal. App. 4th 162, 175

12  (2015); Qualified Patients Assn. v. City of Anaheim, 187 Cal. App. 4th 734, 764 (2010). Further,

13  to the extent plaintiff's claims under the Unruh Act are not based on the ADA, plaintiff has failed

14  to allege that Yolo County intentionally discriminated against him.

15       Finally, defendant Yolo County argues that plaintiff's Unruh Act claim fails because he

16  has not complied with the claim-presentation requirement of California's Government Claims

17  Act. The Government Claims Act applies to Unruh Act claims to the extent the plaintiff seeks

18  monetary relief not incidental to any injunctive relief. Frazier, 2023 WL 4108322, at *58 (citing

19  Lozada v. City & Cnty. of San Francisco, 145 Cal. App. 4th 1139, 1166 (2006)). Under the

20  California Government Claims Act, set forth in California Government Code sections 810 et seq.,

21  a plaintiff may not bring a suit for monetary damages against a public employee or entity unless

22  the plaintiff first presented the claim to the local public entity by:  (1) "Delivering it to the clerk,

23  secretary, or auditor thereof"; (2) "Mailing it to the clerk, secretary, auditor, or to the governing

24  body at its principal office"; or (3) "If expressly authorized by an ordinance or resolution of the

25  public entity, submitting it electronically to the public entity in the manner specified by the

26  ordinance." Cal. Gov't Code § 915. Compliance with this "claim presentation requirement"

27  constitutes an element of a cause of action for damages against a public entity or official. State v.

28  Superior Court (Bodde), 32 Cal.4th 1234, 1244 (2004). Thus, timely presentation of a claim under

14

1    the Government Claims Act is an element of the cause of action and must be pled in the

2    complaint. Id. at 1237, 1240; see also Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d. 1470, 1477

3    (9th Cir. 1995). A plaintiff must present facts demonstrating compliance, rather than simply

4    conclusions suggesting as much. Shirk v. Vista Unified School Dist., 42 Cal.4th 201, 209 (2007).

5    Such requirements also apply to state law claims included in a federal action. See Volis v.

6    Housing Auth. of the City of L.A. Emps., 670 F. App'x 543, 544 (9th Cir. 2016) (unpublished).

7         To be timely, a claim must be presented "not later than six months after the accrual of the

8    cause of action." Cal. Govt. Code § 911.2. Thereafter, "any suit brought against a public entity"

9    must be commenced no more than six months after the public entity rejects the claim. Cal. Gov't

10   Code, § 945.6, subd. (a)(1). Federal courts require compliance with the California Government

11   Claims Act for pendant state law claims that seek damages against state employees or entities.

12   Willis v. Reddin, 418 F.2d 702, 704-05 (9th Cir. 1969); Mangold, 67 F.3d at 1477.

13        Here, plaintiff has not alleged in his complaint that he complied with the Government

14   Claims Act. Plaintiff states that he exhausted his administrative remedies and notified Yolo

15   County about specific incidents of discrimination. (ECF No. 2 ¶ 23-24.) In his opposition to

16   defendant Yolo County's motion to dismiss, plaintiff alleges that he filed a claim for damages

17   form on three occasions. (ECF No. 25 at 10.) However, plaintiff has not shown that he properly

18   presented his claim to Yolo County as required by statute. See Cal. Gov't Code § 915.

19        Further, in plaintiff's opposition, he also states that he is seeking injunctive relief and

20   statutory damages but is not explicitly making any claim for monetary damages. (ECF No. 25 at

21   10.) To the extent plaintiff is arguing that he is only seeking injunctive relief with respect to the

22   Unruh Act claim, this is incorrect because plaintiff's complaint specifies that he is seeking "actual

23   damages" and "statutory damages" for each offence pursuant to California Civil Code section 51.

24   (ECF No. 2 at ¶ 56F-G.)

25        Therefore, plaintiff has failed to state a claim against Yolo County under the Unruh Act.

26   Plaintiff's claim should be dismissed and the motion to dismiss granted on this ground.

27   **V.    Leave to Amend**

28        If the court finds that a complaint or claim should be dismissed for failure to state a claim,

1    the court has discretion to dismiss with or without leave to amend.  See Davis v. Miranda, 2020

2    WL 1904784, at *2 (E.D. Cal. Apr. 17, 2020). Leave to amend should be freely granted when

3    justice so requires, Fed. R. Civ. P. 15(a), and if it appears possible that the defects in the

4    complaint could be corrected, especially if a plaintiff is pro se, Lopez, 203 F.3d at 1130-31; Cato

5    v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to

6    amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that

7    the deficiencies of the complaint could not be cured by amendment." (citation omitted)).

8    However, if, after careful consideration, it is clear that a claim cannot be cured by amendment,

9    the court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06; Cal. Architectural Bldg.

10   Prod. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir. 1987) ("Valid reasons for

11   denying leave to amend include undue delay, bad faith, prejudice, and futility.").

12        Here, plaintiff has failed to state a claim against any defendant. However, given plaintiff's

13   pro se status, plaintiff should be granted leave to file an amended complaint to the extent he can

14   allege additional facts to state a claim.

15   **VI.    Conclusion**

16        For the reasons set forth above, IT IS HEREBY RECOMMENDED as follows:

17            1.  Plaintiff's motion to remand (ECF No. 14) be DENIED;

18            2.  Defendants Zipline and Yolo Land's motion to dismiss (ECF No. 21) be

19                GRANTED;

20            3.  Defendant Yolo County's motion to dismiss (ECF No. 22) be GRANTED; and

21            4.  Plaintiff may file an amended complaint within thirty (30) days of the issuance

22                of an order adopting these findings and recommendations. The amended

23                complaint must comply with the requirements of the Federal Rules of Civil

24                Procedure, and the Local Rules of Practice; the amended complaint must bear

25                the docket number assigned this case and must be labeled "First Amended

26                Complaint"; failure to file an amended complaint in accordance with this order

27                will result in a recommendation that this action be dismissed.

28        These findings and recommendations are submitted to the United States District Judge

16

1  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

2  days after being served with these findings and recommendations, any party may file written

3  objections with the court and serve a copy on all parties.  Such a document should be captioned

4  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

5  shall be served on all parties and filed with the court within seven (7) days after service of the

6  objections. Failure to file objections within the specified time may waive the right to appeal the

7  District court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951

8  F.2d 1153, 1156-57 (9th Cir. 1991).

9  Dated:  June 26, 2025

10  _____
    CAROLYN K. DELANEY
11  UNITED STATES MAGISTRATE JUDGE

12  5, bake.1063.25

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28